IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON K. D., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | NO. CV-24-05922-AGR <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff[1] filed this action on July 15, 2024.  The parties filed briefs on the disputed issues.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court affirms the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 6, 9.)

## I.

## **PROCEDURAL HISTORY**

Plaintiff was found to be disabled beginning July 31, 2000 in a determination dated May 12, 2003. Administrative Record ("AR") 99-102.

On April 20, 2016, Plaintiff was determined to be no longer disabled as of April 1, 2016. AR 92-93. The determination was upheld upon reconsideration after a hearing before a Disability Hearing Officer. AR 94. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 18, 2013, the ALJ conducted a hearing at which Plaintiff's representative appeared on Plaintiff's behalf and a vocational expert testified. AR 39-52. Plaintiff's representative stated that Plaintiff declined to appear at the hearing, and the ALJ found a constructive waiver of Plaintiff's right to attend. AR 13, 41-42, 624-25. On December 20, 2023, the ALJ issued a decision denying benefits. AR 10-28. The Appeals Council denied review on June 5, 2024. AR 1-6. This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. *Smith v. Berryhill*, 587 U.S. 471, 474 (2019). The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence" means "'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. When the evidence is susceptible to more than one rational

interpretation, the court must defer to the Commissioner's decision. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

Following the eight-step sequential analysis applicable to cessation of disability determinations, 20 C.F.R. § 404.1594, the ALJ found that Plaintiff had experienced medical improvement as of April 1, 2016. AR 17.

As of April 1, 2016, Plaintiff has the severe impairments of anxiety disorder; panic disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); obsessive-compulsive disorder (OCD); major depressive disorder; and papillary thyroid carcinoma with neck metastasis, status-post total thyroidectomy and radical neck dissection. AR 15. These impairments did not meet or medically equal the severity of a listed impairment. AR 15-17.

The ALJ found that, beginning April 1, 2016, Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels except that she can understand, remember, and carry out simple, routine work tasks but not at a production rate pace (for example, no assembly line jobs); tolerate occasional work place changes; and have occasional interaction with coworkers and supervisors. She may not have contact with the public. AR 20.

Plaintiff has no past relevant work.  AR 26.  The ALJ found that, beginning April 1, 2016, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as floor waxer; linen room attendant; marker; and collator operator.  AR 26-27.  Plaintiff's disability, therefore, ended on April 1, 2016, and she has not become disabled again within the meaning of the Social Security Act since that date through December 20, 2023, the date of the ALJ's decision.  AR 27.

### C. Medical Evidence

During the relevant period beginning April 1, 2016, Plaintiff argues that the ALJ erred in giving no significant weight to the opinions of Dr. Solomon and Dr. Carlstroem.  Because Plaintiff's claim was filed before March 27, 2017, the ALJ correctly proceeded under 20 C.F.R. § 404.1527.

For applications filed before March 27, 2017, an opinion of a treating physician is given more weight than the opinion of a non-treating physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and internal quotations omitted).  A treating physician's opinion may be entitled to the greatest weight even if it does not meet the test for controlling weight.  *Id.* at 631-32.  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

4

### 1. Dr. Solomon

In December 2015, Plaintiff reported that she drove her car to Sacramento for a hearing, received confirmation that her suspension will be revoked in a month, and felt she could begin to pursue her chosen career. AR 703. On February 19, 2016, Plaintiff reported that she was recommended for credentialing by the California Commission on Teacher Credentialing. On mental status examination, Plaintiff had good eye contact, normal psychomotor activity, anxious mood, normal speech, goal directed thought process, and fair judgment and insight. She was cooperative and friendly. She was responding gradually to treatment with multiple stressors. She was continued on medication. AR 699. On April 28, 2016, a treating provider's letter to the Social Security Administration advised that Plaintiff had been trying hard to get back on her feet and one day be gainfully employed but that severe significant stressors could make her regress and possibly go back to abusing alcohol.[3] AR 721, 726 (treatment notes).

On May 27, 2017, Plaintiff underwent a consultative mental evaluation by a psychologist. Her posture and gait were normal, and she was engaged and cooperative. AR 737. She reported having a close male friend and staying in touch with high school friends. AR 738. She reported doing household chores, running errands, shopping, and cooking, and being able to go places herself if need be. AR 739. On mental status examination, Plaintiff was well kept, in no apparent distress, maintained good eye contact, and established rapport with the psychologist. Plaintiff's speech was fluent with normal rate and rhythm. Her mood was anxious with appropriate affect. Her thought process was linear and goal directed, and her thought content was within normal limits. Plaintiff remembered 3/3 items immediately and 2/3 items after five minutes. She could do serial 7s and serial 3s. She exhibited common sense understandings. Despite having anxiety symptoms, she presented as open and engaging. AR

---

[3] During this period, Plaintiff appeared to be in a master's degree program. AR 710, 723, 771. On March 9, 2016, the treating provider noted Plaintiff was working on her thesis. AR 726, 729.

739-40. The psychologist opined that Plaintiff had mild difficulties in social functioning; no difficulties in focusing, concentration, persistence, and pace; no limitations in performing either simple, repetitive tasks or detailed, complex tasks; no difficulties performing work activities without special or additional supervision; mild limitations completing a normal workday and workweek due to her mental condition; and mild limitations in interacting with others and handling the usual stresses of employment. AR 740-41.

On mental status examination in August 2017, a treating provider noted Plaintiff was well groomed and cooperative. Her speech was normal. Her mood was anxious and tense. Her concentration, attention, and memory were intact. Her judgment was impaired. She accepted her emotional problems. AR 758.

On August 25, 2017, Dr. Solomon opined that Plaintiff had mild limitation in adapting or managing herself and moderate limitation in understanding, remembering or applying information; interacting with others; and maintaining concentration, persistence or pace. AR 754. On September 1, 2017, Dr. Solomon completed a mental residual functional capacity assessment. Dr. Solomon opined that Plaintiff was not significantly limited in her ability to understand, remember, and carry out simple instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism; maintain socially appropriate behavior; and respond appropriately to changes in the work setting. Dr. Solomon opined that Plaintiff had moderate limitation in her ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and interact appropriately with the public. AR 762-65.

Contrary to Plaintiff's argument, the ALJ accepted Dr. Solomon's assessment of Plaintiff's moderate limitations and mild limitations in the four categories of mental functioning. AR 23-24. The ALJ accurately stated that the Plaintiff's residual capacity assessment was not inconsistent with Dr. Solomon's opinions. AR 24. The ALJ limited Plaintiff to simple, routine tasks in a non-production-rate work setting; occasional workplace changes; occasional interaction with supervisors and coworkers; and no contact with the public. AR 20. Plaintiff has not identified any inconsistencies between the ALJ's residual functional capacity assessment and Dr. Solomon's opinions.

### 2. Dr. Carlstroem

On July 1, 2021, Plaintiff reported that she has depression, exercises regularly, and has no sleep problems. She denied suicidal thoughts. On mental status examination, Plaintiff was well groomed, cooperative, calm, and pleasant. Her speech was fluent and clear. She had normal concentration and attention with above average intelligence and intact memory, thought processes, judgment, insight and motor activity. Her mood was euthymic and her affect was pleasant and happy. She was prescribed Ketamine. AR 995-96.

On September 27, 2021, Plaintiff reported that she joined a gym and was eating a vegetarian diet. AR 974. On December 16, 2021, Plaintiff reported that she exercised two or three times per week. She managed her own meals, laundry, medications, and home, and did not need help with shopping, or transportation. She remembered 3/3 items and was negative for cognitive impairment. She reported anxiety. AR 959-60, 1192.

On July 29, 2022, Plaintiff reported being a student. AR 1044. She denied fainting spells, vomiting, difficulty walking, dizziness, or transient unconsciousness. She drinks alcohol moderately. AR 1041-42, 1133, 1190. She had normal affect and good judgment. AR 1142.

On January 16, 2023, Plaintiff reported moderate depression for which she sees a psychiatrist once a month and is prescribed Seroquel, Buspar, Abilify, and

Lamictal. She does not receive therapy and denied suicidal thoughts. Mini-cognition testing was negative. Plaintiff reported exercising and walking three to four times per week. AR 1121, 1128. Plaintiff reported that she and her roommate split meals, laundry and household chores; and she does not need help with medications, shopping, or transportation. Her mental health is unchanged from one year ago. AR 1122. On examination, her mood, affect, judgment, and insight were normal. Her physical examination was unremarkable except for moderate cerumen in both ears. AR 1127. On February 7, 2023, Plaintiff reported feeling better and going to the grocery store with her roommate even though she felt others were judging her. AR 1205. On March 7, 2023, Plaintiff's mood was calm, her affect was appropriate, and her thinking was coherent. Her memory, attention, and concentration were normal. She discussed self-criticism, worry about what others think of her, and self-forgiveness. AR 1204.

On March 14, 2023, Plaintiff reported dieting and exercising three times per week, including 30 minutes on the treadmill and walking around the neighborhood. AR 1097; *see also* AR 1210. Her mood, affect, judgment, and insight were normal. She was started on a weight loss drug. AR 1099. On April 19, 2023, Plaintiff was seen for nausea, vomiting and dizziness as a side effect of increasing her dosage of the weight loss drug. AR 1089. Her dosage was reduced and restarted once she was asymptomatic of side effects. AR 1091. On April 27, 2023, Plaintiff reported that she performs all activities of daily living without difficulty. AR 1064. On May 1, 2023, Plaintiff was noted to have a mildly anxious mood with appropriate affect. Her speech was fluid and her thinking was coherent. She had normal memory, attention, and concentration. She reported being in a panic a week ago when her roommate did not come home because he was in a crash. Plaintiff was worried that Social Security would consider her too "well" and was afraid to appear improved. She reported the nausea and dizziness she had on the weight loss drug. She felt anxious about her upcoming surgery.

AR 1203.  On May 31, 2023, Plaintiff reported drinking socially and using marijuana.  She had a normal affect and exhibited good judgment.  AR 1070, 1072, 1078, 1083.  On June 13, 2023, Plaintiff was noted to have a mildly anxious mood with appropriate affect.  Her speech was fluid and her thinking was coherent.  She had normal memory, attention, and concentration.  She was planning a weekend trip to a ghost town and was thinking of taking up pickleball.  AR 1202.

On September 12, 2022, Dr. Carlstroem wrote that he had seen Plaintiff through telepsychiatry since September 14, 2021.  Plaintiff suffered from chronic depression; severe panic attacks with disabling symptoms of vomiting, tremor, and passing out; and severe agoraphobia, going out only for rare medical appointments.  Further, Plaintiff depended on others for shopping, cooking, cleaning, etc.  Plaintiff would not participate in a disability interview or hearing even by phone or video due to anxiety "in anticipation of a[] perceived risk or threat."  AR 1002, 1034, 1051.  On May 15, 2023, Dr. Carlstroem filled out a mental residual functional capacity questionnaire.  AR 1218-22.  Dr. Carlstroem diagnosed major depression, panic disorder, and generalized anxiety disorder.  Dr. Carlstroem stated that Plaintiff is unable to function outside the home except for some medical appointments.  She bathes twice per week due to fearfulness and has thoughts of suicide.  AR 1218-19.  Dr. Carlstroem opined that Plaintiff had no useful ability to function in the areas of maintaining attention for a two-hour segment; maintaining regular attendance and customary punctuality; completing a normal workday and workweek without interruption from psychologically based symptoms; accepting instructions and responding appropriately to criticism; and dealing with normal work stress.  Dr. Carlstroem opined that Plaintiff would be unable to meet competitive standards in the areas of sustaining an ordinary routine without special supervision; making simple work related decisions; performing at a consistent pace; responding to changes in the workplace; and maintaining social appropriate behavior.  AR 1220-21.  Dr.

Carlstroem expected that Plaintiff would be absent more than four days per month.  AR 1222.

The ALJ gave little weight to Dr. Carlstroem's opinions because they were (1) not supported by clinical or diagnostic findings and appeared to be based solely on Plaintiff's subjective allegations; (2) inconsistent with evidence from other medical and nonmedical sources; and (3) contradicted by Plaintiff's activities of daily living.  AR 24.

As shown by the discussion above, the ALJ's reasoning is amply supported by substantial evidence.  Dr. Carlstroem does not support the opinions with mental status examinations, testing, or other clinical evidence.  Indeed, it is difficult to reconcile Dr. Carlstroem's opinions of Plaintiff's functional ability with the person described by other providers, including those who saw Plaintiff in person.  For example, Dr. Carlstroem opined that Plaintiff is a severe agoraphobic who goes out only for doctor appointments.  By contrast, Plaintiff reported to other providers that she joined a gym (AR 974), walked around the neighborhood (AR 1097), came to Long Beach twice a week when she lived in Hemet (AR 808), and was planning a weekend trip to a ghost town and was thinking of taking up pickleball (AR 1202).  Whereas Dr. Carlstroem opined that Plaintiff is dependent on others for activities of daily living such as shopping, cooking, and cleaning, Plaintiff reported to other providers that she and her roommate shared household tasks, she managed her own medications, and she did not need help with shopping or transportation.  AR 959-60, 1064, 1122, 1192.  Whereas Dr. Carlstroem described Plaintiff as bathing twice per week, other providers who saw Plaintiff in person described her as well groomed.  *E.g.*, AR 995-96.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Attmore*, 827 F.3d at 875.  Plaintiff has not shown error.

### D. Step Two

Plaintiff argues that the ALJ erred in concluding that her papillary thyroid carcinoma with neck metastasis was not severe at step two of the sequential analysis.

The ALJ listed papillary thyroid carcinoma with neck metastasis, status-post total thyroidectomy and radical neck dissection, as a medically determinable impairment, AR 15, but found that it did not significantly limit her ability to ability to perform basic work activities for 12 consecutive months. AR 20. The medical records indicate that thyroid masses appeared on a sonogram in February 2023, AR 1007-08, and Plaintiff underwent surgery on June 15, 2023 without complications, AR 1226-27. The ALJ's decision issued six months later on December 20, 2023. AR 10-28.

Plaintiff argues that the nodules were first detected in November 2022 and confirmed by sonogram in February 2023. AR 1133, 1135. Nevertheless, because step two was decided in her favor, "[a]ny alleged error is therefore harmless and cannot be the basis for remand." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting residual functional capacity "*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not" because the residual functional capacity assessment includes "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe'" (emphasis in original). Plaintiff has not identified any functional limitations from papillary thyroid carcinoma with neck metastasis, status post total thyroidectomy and radical neck dissection, that the ALJ failed to include in the residual functional capacity assessment. The medical records do not identify any such functional limitations. Thus, any error is harmless.

11

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: September 30, 2025

_____
ALICIA G. ROSENBERG
United States Magistrate Judge